362 S.E.2d 302 (1987)
87 N.C. App. 659
WHITTAKER GENERAL MEDICAL CORPORATION
v.
Connie DANIEL and Dr. T.C. Smith Company.
No. 8710SC230.
Court of Appeals of North Carolina.
December 1, 1987.
*304 Hunton & Williams by Julius A. Rousseau, III, Raleigh, for plaintiff-appellant.
Morris, Golding, Phillips & Cloninger by William C. Morris, Jr., Ashville, for defendants-appellees.
WELLS, Judge.
The primary thrust of plaintiff's appeal attacks the trial court's grant of judgment notwithstanding the verdict on all questions resolved in favor of plaintiff by the jury. Citing the inadequacy of the grounds asserted by defendants' Motion for Directed Verdict which was subsequently relied upon to provide support for the judgment notwithstanding the verdict, plaintiff contends that the judgment notwithstanding the verdict cannot stand. We disagree.
The standard for review of a grant of judgment notwithstanding the verdict is well established: Where evidence, viewed in the light most favorable to non-movant, is not sufficient as a matter of law to support the verdict in favor of non-movant, judgment notwithstanding the verdict is properly granted. Summey v. Cauthen, 283 N.C. 640, 197 S.E.2d 549 (1973); Harvey v. Norfolk Southern Railway, 60 N.C. App. 554, 299 S.E.2d 664 (1983). Additionally, plaintiff correctly points out that judgment notwithstanding the verdict may only be properly granted where movant earlier requested a directed verdict and asserted grounds at that time sufficient to support both a directed verdict and judgment notwithstanding the verdict. Dickinson v. *305 Pake, 284 N.C. 576, 201 S.E.2d 897 (1974); Hornby v. Penn. Nat'l Mut. Casualty Ins. Co., 77 N.C.App. 475, 335 S.E.2d 335 (1985). In the present case, defendant moved orally for directed verdict asserting as bases for the motion that the covenant not to compete or Non-Competition Agreement: (1) failed for lack of consideration; (2) was overbroad; and (3) was superceded by a later employment contract constituting a novation of the contract. While we agree with plaintiff that the grounds relating to failure of consideration and novation of contract would not support the judgment notwithstanding the verdict, the lack of a legitimate business interest and the overbreadth of the covenant's terms cause us to affirm the grant of judgment notwithstanding the verdict.
Plaintiff begins its argument regarding the enforceability of the Non-Competition Agreement by positing that the initial denial of summary judgment by Judge Reid barred any subsequent ruling or determination by a superior court judge relating to the agreement's enforceability. Plaintiff cites Calloway v. Ford Motor Co., 281 N.C. 496, 189 S.E.2d 484 (1972) in support of its contention that denial of summary judgment by one superior court judge constitutes an implicit ruling on the law and facts represented by pleadings, supporting affidavits and documents and as such cannot be overruled subsequently by another superior court judge through judgment notwithstanding the verdict. We disagree. In Calloway, supra, our Supreme Court ruled that there is no appeal from one superior court judge to another. We note also that this Court has consistently held that one superior court may not overrule another. See Jenkins v. Wheeler, 81 N.C.App. 512, 344 S.E.2d 371 (1986); Barbour v. Little, 37 N.C.App. 686, 247 S.E.2d 252, disc. rev. denied, 295 N.C. 733, 248 S.E.2d 862 (1978). In Harris v. Walden, 314 N.C. 284, 333 S.E.2d 254 (1985), our Supreme Court ruled that appellate review of a denial of a Motion for Summary Judgment would not be appropriate where there had been a trial on the merits. We find the Harris analogy to be more appropriate to the question presented here, and hold that a denial of a Motion for Summary Judgment, based upon only a forecast of evidence, should not operate to bar the granting of a directed verdict or a judgment notwithstanding the verdict based on the evidence actually presented at trial. For decisions of federal courts in agreement with our holding, see Catts Co. v. Gulf Ins. Co., 723 F.2d 1494 (10th Cir.1983); Gross v. Southern Railway Co., 446 F.2d 1057 (5th Cir.1971); Robbins v. Milner Enterprises, 278 F.2d 492 (5th Cir.1960). We therefore hold that Judge Herring was not barred by the earlier denial of summary judgment as establishing the law of the case.
Further, plaintiff argues that the Non-Competition Agreement was valid in that it was supported by valuable consideration. To be enforceable, a Non-Competition Agreement, as part of an ongoing employment contract, must be: (1) in writing, (2) made part of an employment contract, (3) based on valuable consideration, (4) reasonable as to time and territory and (5) not against public policy. AEP v. McClure, 308 N.C. 393, 302 S.E.2d 754 (1983); Wilmar, Inc. v. Liles and Wilmar, Inc. v. Polk, 13 N.C.App. 71, 185 S.E.2d 278 (1971). Defendant's assertion of only two of the foregoing elements as grounds for directed verdict necessarily confines our review to an analysis of the questions of the sufficiency of the given consideration and the overbreadth of the agreement; these two issues being dispositive, we need not reach the issue of novation.
Where a Non-Competition Agreement is entered into after the establishment of the underlying employment relationship, as in the present case, such agreement must be in the nature of a new contract and supported by valuable consideration. Greene Co. v. Kelley, 261 N.C. 166, 134 S.E.2d 166 (1964); Associates, Inc. v. Taylor, 29 N.C.App. 679, 225 S.E.2d 602 (1976). The evidence in the case at bar tended to show that at the time defendant Ms. Daniel signed the Non-Competition Agreement, plaintiff had just promoted her to a full-time sales position and had increased her yearly salary from $6,448 to *306 $7,272 with an additional car allowance of $155 per month. This Court has held that a promise, grant of a promotion, or change in compensation from salary to commission constitutes valuable consideration which would support a Non-Competition Agreement. Associates, Inc., supra; See also Machinery Co. v. Milholen, 27 N.C.App. 678, 220 S.E.2d 190 (1975). We hold that Ms. Daniel's promotion and corresponding salary increase provided a valuable consideration sufficient to support the Non-Competition Agreement.
Plaintiff next contends that the Non-Competition Agreement is not overly broad; pointing out that because plaintiff sought to enforce only paragraph 2(b) of the agreement, the remainder of the agreement relating to other restrictions could not be before the Court and therefore could not provide a proper basis for judgment notwithstanding the verdict. Plaintiff argues in the alternative that only paragraph 2(b) should be considered in the overbreadth analysis since any other potentially overly-restrictive clauses should be severed from the agreement. See Schultz and Assoc. v. Ingram, 38 N.C.App. 422, 248 S.E. 2d 345 (1978). Accordingly, plaintiff contends the Court should not render the entirety of the contract a nullity on the basis of a few overly restrictive, hence invalid clauses. We believe otherwise. Even if we agree with plaintiff's argument that the only clause subject to the overbreadth analysis should be that at paragraph 2(b) regarding the two-year sales restriction, we would still find it invalid for being overly restrictive.
The overbreadth analysis necessarily embraces not only territorial, time, and business restrictions but as well their reasonableness in relation to the protection of the employer's legitimate business interest. Robins & Weill, Inc. v. Mason, 70 N.C.App. 537, 320 S.E.2d 693 (1984); Manpower, Inc. v. Hedgecock, 42 N.C.App. 515, 257 S.E.2d 109 (1979); Enterprises, Inc. v. Heim, 6 N.C.App. 548, 170 S.E.2d 540, modified, 276 N.C. 475, 173 S.E.2d 316 (1969). A restriction as to territory is reasonable only to the extent it protects the legitimate interests of the employer in maintaining his customers. Manpower, Inc., supra. This Court, having recently decided a case very nearly on point, set forth the definition of legitimate business interest: "[A] business interest, not fictitious, which, when weighed against the public's interest in a free economic arena, is worthy of protection in order to encourage and stimulate business efforts and innovations." United Laboratories, Inc. v. Kuykendall and Share Corp., 87 N.C. App. 296, 361 S.E.2d 292 (1987). In United Laboratories, this Court held as invalid a Non-Competition Agreement because plaintiff employer lacked a legitimate business interest where plaintiff was engaged in a highly competitive sales industry and defendant salesperson could have located information regarding plaintiff's customers in a public listing. That is, the names and business habits of plaintiff's customers could not be considered confidential or a trade secret. This is true, especially where, as the court points out, defendant salesperson's knowledge about plaintiff's customers had been acquired by defendant through his own efforts. Similarly, Ms. Daniel, in the present case, utilized her own personal sales skills to create her customer accounts. Ms. Daniel was not handed a ready-made clientele list (Compare, Schultz and Assoc., supra) nor did she learn the names of the physicians solely from plaintiff. Rather, Ms. Daniel recruited the clientele using her own sales abilities and skills. This was essentially knowledge and information acquired through Ms. Daniel's own efforts on plaintiff's behalf but not through plaintiff's efforts. Also, as defendants aptly point out, any person may gain knowledge of hospitals and physicians through a telephone directory.
While it is true that an employer in the business of sales has a strong interest in maintaining and retaining its sales personnel, See Welcome Wagon, Inc. v. Pender, 255 N.C. 244, 120 S.E.2d 739 (1961), the public and the individual sales people also have competing business interests which may outweigh those of the employer. Kadis v. Britt, 224 N.C. 154, 29 S.E.2d 543 *307 (1944); Beam v. Rutledge, 217 N.C. 670, 9 S.E.2d 476 (1940); United Laboratories, supra. Where an employee possesses extraordinary sales abilities, cultivated on his own with little or no guidance from the employer, and finds that he could better use those skills under another employer, public policy should prevent his first employer from restraining his personal career success. This is true especially where the employee has not taken or utilized the employer's confidential knowledge or information. Because we can find no confidential information or trade secrets used by Ms. Daniel and because the development of Ms. Daniel's sales and marketing skills were the results of her own initiation and efforts, we hold that plaintiff has failed to prove a business interest worthy of the protection provided by paragraph 2(b) of the Non-Competition Agreement. Accordingly, we hold that paragraph 2(b) is overly restrictive and therefore invalid for overbreadth.
Finally, plaintiff omits from its appeal any argument relating to its tortious interference with contract claim against Dr. T.C. Smith Co. Because we have held the Non-Competition Agreement unenforceable, plaintiff cannot utilize the agreement in any respect as the basis for its claim. United Laboratories, supra. Moreover, when an employment contract, as in this case, is terminable at will and defendant, in competition with plaintiff, recruits one of plaintiff's employees, an action for tortious interference with contract will not lie. Peoples Security Life Ins. Co. v. Hooks, 86 N.C.App. 354, 357 S.E.2d 411 (1987). Accordingly, the grant of judgment notwithstanding the verdict by the trial court below is in all respects
Affirmed.
EAGLES and MARTIN, JJ., concur.